DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**LEON DENARD QUINN,**
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

Nos. 4D19-2006 and 4D19-2007

[November 18, 2020]

Consolidated appeals from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; John S. Kastrenakes, Judge; L.T. Case Nos. 502016CF000910A and 502016CF002207A.

Carey Haughwout, Public Defender, and Erika Follmer, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and Rachael Kaiman, Assistant Attorney General, West Palm Beach, for appellee.

MAY, J.

The defendant timely appeals his convictions and concurrent sentences following a final violation hearing in two cases. He argues the trial court: (1) fundamentally erred in finding he violated probation by committing criminal mischief; and (2) erred in failing to conduct a danger hearing and make written findings on whether he poses a danger to the community. He also argues the trial court's written order should be corrected to reflect the offense of battery. We agree with him on the first issue only and affirm on the remaining issues.

The defendant entered a plea in two cases (grand theft and aggravated battery) and was placed on probation.[1] While on probation, the State alleged the defendant violated, among other conditions,

---

[1] The State nolle prossed the remaining charges of fraudulent use of a credit card (grand theft case) and throwing a deadly missile at a building (aggravated battery case).

**Standard Condition 5:** "You will live without violating any law. A conviction in a court of law is not necessary for such a violation of law to constitute a violation of your probation, community control, or other form of court ordered supervision."

Specifically, the State alleged the defendant committed a: 1) burglary of an occupied dwelling, criminal mischief, and two counts of aggravated battery on October 5, 2018; 2) violation of a domestic violence injunction on October 5, 2018; and 3) domestic battery on September 18, 2018. On appeal, the defendant challenges only the violation based on the criminal mischief charge.

The court held a final probation violation hearing. The State called the deputy that responded to the domestic violence incident on September 18, 2018. The deputy testified the defendant's girlfriend said the defendant had battered her. She was upset, crying, and had visible injuries. The State introduced a composite exhibit of photographs of the girlfriend's injuries.

The defendant was served with an injunction for protection against domestic violence and an order extending injunction on October 4, 2018. The State also introduced the injunction into evidence.

The defendant's girlfriend testified the following day that the defendant pulled up in a van outside her sister's house while she and a friend were sitting outside. She ran into the house but was unable to close the door behind her because the door stopper came off. The defendant followed her into the house. They both slipped, but when the defendant got up, he grabbed the door stopper and began striking her with it.

During the incident, a vase belonging to the victim's sister broke. On cross examination, the defendant's girlfriend conceded she didn't remember "how exactly it broke," but that it "broke from [the defendant]" and she "didn't realize it was broke[n] until he had left [] the house." Her sister bought the vase for $80.

The girlfriend's friend testified that he went into the house to see what was going on because he heard hollering. He saw the defendant and his girlfriend "locked up together." The defendant then ran out of the house with the stopper.

Another deputy responded to the incident. He testified he saw the broken vase scattered on the floor and was told it was broken. He also

2

confirmed the sister told him she bought the vase for approximately $80. The deputies initially could not find the defendant around the sister's house. He was arrested five days later in the town where his mother lives.

The trial court found the defendant committed the following offenses in violation of his probation:

- Simple battery, as a lesser included offense of the charge of aggravated battery on October 5, 2018, against the girlfriend.[2]
- Burglary of a dwelling on October 5, 2018
- Criminal mischief on October 5, 2018
- Violation of an injunction for protection against domestic violence on October 5, 2018
- Domestic battery on September 18, 2018.

Prior to the hearing, the State filed a memorandum summarizing the defendant's criminal history, which included nine felony and thirty-four misdemeanor offenses. The felony convictions included: one robbery, two grand theft, one possession of cocaine, one dealing in stolen property, one aggravated assault with a firearm, and one possession of a weapon on school property.

At the sentencing hearing, the State argued the defendant "continues to perpetuate the types of crimes that he does without a regard for the women in his life," and "continues to beat each and every one of them that he's in a relationship with." It also noted the defendant was "on probation for a pretty serious aggravated battery" and for a grand theft where he took the credit card of another girlfriend and withdrew $1,600 in cash.

The trial court explained:

I'm intimately familiar with the facts of the probation case[s]. I also am familiar with what happened, from what I found to be as the basis of violation of probation. [W]hile I may briefly and in broad terms talk about the nature of that violation, I am not relying on that violation's facts for the sentence I'm giving . . . because he's presumed innocent of that. I am, of course, go[ing] to consider his background and character, his violations of probation, the types of crimes for which he had committed in the past, the types of violations previous to the

---

[2] The trial court found the defendant did not commit the second count of aggravated battery (which it labeled "as the one against [the friend]"), "whether it be aggravated battery or simple battery."

most recent violation, his ability to follow court orders, all those things are pertinent because they are contained in his criminal punishment code score sheet and they comprise his prior criminal record.

. . . .

I'm not gonna -- I'm go[ing to] focus on the types of priors that he has. Many of them involve personal violence directed against other human beings. Robbery conviction, aggravated assault conviction, many of the misdemeanor convictions involve batteries, five of them. These are personal crimes committed with violence against other human beings. And I only mention that is because, frankly, that's the probation case and the series of violations that we have before us are, you know, are basically the defendant exhibiting violence against other human beings. Most of which, . . . are females, ladies.

It also noted the defendant had a "consistent behavior pattern . . . to visit violence on other human beings, [] violate court orders, [and] beat women. [This court] believes firmly that this is deserving of severe punishment because [the defendant] persists in the same behavior time and time again."

In both the grand theft and aggravated battery cases, the trial court revoked and terminated probation. The court sentenced the defendant to fifteen years in the aggravated battery case and five years in the grand theft case to run concurrently.

The defendant moved to correct a sentencing error pursuant to Florida Rule of Criminal Procedure 3.800(b)(2), arguing: 1) the trial court's written order should be amended to reflect the offense of "battery," rather than "battery (domestic);" and 2) the defendant should be resentenced with written findings as to whether he poses a danger to the community as a violent felony offender of special concern. The trial court denied the motion.

The defendant now appeals his conviction, sentence, and the denial of his Rule 3.800 motion.

- *The Criminal Mischief Violation*

4

The defendant argues the trial court fundamentally erred in finding he committed criminal mischief because the State failed to prove the defendant willfully and maliciously broke the vase. The State responds that it proved the criminal mischief violation by a preponderance of the evidence. On this issue, we agree with the defendant.

We review a trial court's determination of whether a condition of probation has been violated for an abuse of discretion. *Webb v. State*, 154 So. 3d 1186, 1188 (Fla. 4th DCA 2015).

Fundamental errors may be reviewed on appeal absent a contemporaneous objection where "the evidence is totally insufficient as a matter of law to establish the commission of a crime." *F.B. v. State*, 852 So. 2d 226, 230–31 (Fla. 2003). "[R]evoking probation based partly on a purported violation that was not proved or admitted constitutes fundamental error." *Odom v. State*, 15 So. 3d 672, 678 (Fla. 1st DCA 2009).

Here, the trial court found the defendant violated his probation by committing criminal mischief in breaking a vase during the altercation with the victim. Yet, there was no evidence to establish the required willfulness or malice required.

"[T]he criminal mischief statute requires [] the offender act against the property of another willfully and with malice. . . ." *In re J.G.*, 655 So. 2d 1284, 1285 (Fla. 4th DCA 1995); *see also* § 806.13(1)(a), Fla. Stat. (2018).

> "Willfully" means intentionally, knowingly, and purposely.
>
> "Maliciously" means wrongfully, intentionally, without legal justification or excuse and with the knowledge that injury or damage will or may be caused to another person or the property of another person.

*M.H. v. State*, 936 So. 2d 1, 3 (Fla. 3d DCA 2006) (quoting Fla. Std. Jur. Instr. (Crim.) 12.4).

We have held the doctrine of transferred intent cannot support a conviction for criminal mischief. *In re J.G.*, 655 So. 2d at 1285. Nor can malice "be presumed based upon a finding of property damage." *M.H.*, 936 So. 2d at 3. Rather, malice is determined by "the circumstances surrounding the conduct which caused the damage." *Id.*

The State argues it established by a preponderance of the evidence that the defendant acted with malice towards the vase "based upon [his] initial actions in chasing after the victim and swinging a metal object around to hit her." But that evidence proves only that the defendant acted with malice toward the victim, not the vase. *See In re J.G.*, 655 So. 2d at 1285 ("The intent to damage the property of another does not arise by operation of law where the actor's true intention is to cause harm to the person of another.").

The State provided no evidence the defendant acted maliciously towards the vase. The victim's testimony that the vase "broke from [the defendant]" is simply insufficient to support the criminal mischief charge. It did not establish the defendant broke the vase "wrongfully, intentionally, without legal justification or excuse, and with the knowledge that injury or damage will or may be caused to" the vase. Fla. Std. Jur. Instr. (Crim.) 12.4.

Because the trial court found the defendant violated several other conditions of probation, we affirm the revocation of probation and sentence. We remand for the trial court to enter a corrected order deleting criminal mischief as a basis for the probation revocation.

- *Section 948.06, Florida Statutes*

In his second issue, the defendant argues the trial court erred in failing to make written findings on whether he presents a danger to the community under section 948.06, Florida Statutes (2018), before imposing sentence. We disagree.

Section 948.06(8)(a) "provides further requirements regarding a probationer or offender in community control who is a violent felony offender of special concern" ("VFOSC"). *Id.* Subsection (8)(b) defines who qualifies as a VFOSC. *Id.* § 948.06(8)(b). Subsection (8)(d) provides limitations on a trial court when addressing a person who qualifies as a VFOSC. *Id.* § 948.06(8)(d). For any violation "other than a failure to pay costs, fines, or restitution," the offender must remain in custody pending the resolution of their violation, and the court cannot dismiss the violation warrant "without holding a recorded violation-of-probation hearing." *Id.*

The statute then provides that if the court determines the defendant is a VFOSC, it must make written findings concerning whether the defendant poses a danger to the community. *Id.* § 948.06(8)(e). This dangerousness finding is necessary because it dictates the sentencing options available to the trial court. If the court finds the VFOSC does not pose a danger to the

6

community, "the court may revoke, modify, or continue the probation or community control or may place the probationer into community control . . . ." *Id.* § 948.06(8)(e)2.b.  If, however, the court finds the VFOSC poses a danger, it is required to "revoke probation and [] sentence the offender up to the statutory maximum, or longer if permitted by law." *Id.* § 948.06(8)(e)2.a.

Here, neither the State nor the defendant sought to invoke the VFOSC statute in the circuit court.  The State did not add 12 points to the defendant's scoresheet as a VFOSC even though he qualified to be treated as such.  And, the trial court did not determine the defendant was a VFOSC.  Perhaps most importantly, the trial court sentenced the defendant to the maximum sentence allowable.  The trial court did not modify or continue him on probation, which would have required the court to make the specific written findings in determining whether the defendant posed a danger to the community.

Regardless, the trial court's verbal findings mirrored the statutory written findings and could easily be committed to writing upon remand. Because neither the State nor the court relied upon subsection (8)(d) in sentencing the defendant, no error occurred.

*Affirmed in part; Reversed in part and remanded.*

GROSS and KUNTZ, JJ., concur.

\*       \*       \*

**Not final until disposition of timely filed motion for rehearing.**